IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHAEL LUTHER,**

        Plaintiff,

    v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

        Defendant.

Case No. 3:13-CV-02151-SU

**FINDINGS AND RECOMMENDATION**

SULLIVAN, Magistrate Judge:

Michael Luther ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Act. For the reasons set forth below, the Commissioner's decision should be affirmed.

## PROCEDURAL BACKGROUND

On September 8, 2009, plaintiff protectively filed applications for SSI and DIB under Titles II and XVI of the Social Security Act. Tr. 93-94. After his claims were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 20, 120-21. After a hearing, held on June 1, 2012, the ALJ issued a decision finding plaintiff was not disabled until September 3, 2011, the date his age category changed. Tr. 16-34, 35-56. The Appeals Council ("AC") denied plaintiff's subsequent request for review, making the ALJ's decision the final Agency decision. Tr. 1-3. This appeal followed.

## FACTUAL BACKGROUND

Born in 1956, plaintiff was 53 years old on the alleged onset date of August 28, 2009. Tr. 57-59. Plaintiff completed some college and speaks English. Tr. 40. He has past relevant work as a bartender, server, and landscape worker. Tr. 51. Plaintiff alleges disability due to traumatic brain injury resulting from an incident where he was struck by a car while riding his bicycle. Tr. 188.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th

Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts

to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 23. At step two, the ALJ determined that plaintiff has severe impairments of traumatic brain injury with cognitive disorder, personality change, mood disorder, and methamphetamine dependence in current remission. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.*

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: he must not balance on narrow beams, work at unprotected heights or around heavy, moving machinery; he must not perform team activities or transactional dealing; he may have only casual interaction with the public; and he may perform only simple, routine work. Tr. 24. At step four, the ALJ found that plaintiff could not perform any of his past relevant work. Tr. 28. At step five, the ALJ found that prior to reaching age 55, plaintiff could perform other work existing in significant numbers in the national economy, including motel cleaner, small products assembler, and bakery line worker. Tr. 29. The ALJ concluded that plaintiff was not disabled within the meaning of the Act at any time through March 31, 2011, his date last insured. Tr. 30.

## DISCUSSION

Plaintiff alleges that the Commissioner erred by (1) improperly evaluating the opinion of treating physician Michael Wilson, D.O.; and (2) improperly rejecting the lay testimony of Lydia

Page 4 – FINDINGS AND RECOMMENDATION

Luther. For the reasons discussed below, the ALJ's decision was supported by substantial evidence and should be affirmed.

I.      Treating Physician Michael Wilson, D.O.

Plaintiff first argues that the ALJ erroneously rejected the opinion of treating physician Michael Wilson, D.O. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). However, if a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.* In either instance, the ALJ is not required to accept an opinion that is brief, conclusory, or not supported by clinical findings. *Id.* (citation omitted).

Dr. Wilson first treated plaintiff on September 9, 2009, less than two weeks after he was struck by a car while riding his bicycle. Tr. 257. Dr. Wilson opined that plaintiff would "not be competitive in the employment arena within the next 12 months" due to brain injury, cognitive disorder, and resulting balance issues. *Id.*

The ALJ gave little weight to Dr. Wilson's 2009 opinion that plaintiff would be unable to work for the twelve months following his accident. Tr. 26. First, he noted that Dr. Wilson's opinion was contradicted by treatment notes from plaintiff's occupational therapist Colette Kirkwood, OTR in November, 2009. *Id.* Ms. Kirkwood's notes showed improvement in plaintiff's functioning, including his ability to perform personal care and basic meal preparation. Tr. 383. Second, Dr. Wilson's later treatment notes support the ALJ's rejection of his initial estimation of plaintiff's abilities. An ALJ may discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss*, 427 F.3d at 1216. For example, Dr.

Page 5 – FINDINGS AND RECOMMENDATION

Wilson's notes state that plaintiff felt much better and walked without an assistive device as early as November 5, 2009. Tr. 451. He was independent in his activities of daily living, increased his participation in higher-level activities such as meal preparation and house cleaning, and could walk for up to ten blocks. *Id.* By late January of 2010, Dr. Wilson observed plaintiff's condition continue to improve. Tr. 449-50. His walking and gait had improved, and he had increased balance. Tr. 449. He was able to stand up while riding public transportation, and do some light running. *Id.* On examination, plaintiff exhibited full strength throughout, good single-leg balance with eyes open, and symmetric gait. Tr. 449. He could hold a conversation with only occasional word-finding difficulties, and showed good understanding and insight. *Id.* On this record, the ALJ properly rejected Dr. Wilson's 2009 opinion because it was inconsistent with other, more recent evidence in the record, including Dr. Wilson's later findings. *Bayliss*, 427 F.3d at 1216.

In May, 2012, Dr. Wilson wrote a letter to the ALJ stating that plaintiff "has met or equaled the requirements for [Listing] 11.18 Cerebral Trauma, which direct evaluation under Listing 12.02" since his August, 2009 injury. Tr. 456. Dr. Wilson assessed a loss of specific cognitive abilities and persistence of memory impairment, along with marked difficulties in executive function and plaintiff's ability to maintain pace. Tr. 456-57. He assessed "marked difficulties in maintaining social functioning," and concluded that plaintiff could not sustain full-time work. Tr. 457. Plaintiff also contests the ALJ's rejection of Dr. Wilson's May, 2012 assessment.

The ALJ gave "little weight" to Dr. Wilson's 2012 opinion. Tr. 26-27. First, the ALJ noted that while Dr. Wilson's opinion was purportedly based upon his "continuing treatment of [plaintiff]," he had not examined plaintiff in over two years. Tr. 27, 456. Second, the ALJ credited the medical opinion of examining neuropsychologist David Gostnell, Ph.D., whose

Page 6 – FINDINGS AND RECOMMENDATION

opinion contradicts Dr. Wilson's 2012 findings.  Tr. 27.  Dr. Gostnell conducted a comprehensive neuropsychological screening examination of plaintiff in April, 2010.  Tr. 328-35.  On examination, plaintiff was cooperative, pleasant, coherent, and easily engaged, and showed no signs of agitation or resistance.  Tr. 332-33.  He had a full-scale IQ of 91.  *Id.*  In contrast with Dr. Wilson's findings, Dr. Gostnell assessed only mild difficulty with concentration and mental calculations; average capacity for performing unfamiliar operations with letters and numbers; borderline to average memory; and fair prognosis for continued improvement.  Tr. 333, 335.  Because Dr. Wilson's opinion was contradicted by other medical evidence in the record, the ALJ was required to provide specific, legitimate reasons for rejecting it.  *Bayliss*, 427 F.3d at 1216.

The ALJ found that Dr. Wilson's opinion was belied by plaintiff's activities of daily living.  Tr. 27.  The ALJ may reject a physician's opinion if it conflicts with the claimant's activities of daily living.  *Morgan v. Comm'r*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Here, plaintiff's daily activities substantiate a level of functioning inconsistent with the marked limitations assessed by Dr. Wilson.  For example, the ALJ noted that plaintiff lived alone and managed to perform household chores, maintain his hygiene, take public transportation, and do his own shopping.  Tr. 23, 25, 41, 374-75.  He enjoyed caring for a 102-year-old woman who lives in his neighborhood.  Tr. 374.  Plaintiff reported that despite balance issues, he made attempts to help friends with physical labor, volunteered at a friend's landscaping business, and enjoyed riding his bike and running for exercise.  Tr. 39, 331-32, 374, 446.  Plaintiff also retained the cognitive function required to pass a driver's licensing test.  Tr. 373, 446.  Finally, plaintiff's social abilities also contradict Dr. Wilson's assessment of his cognitive functioning and limitations.  For example, plaintiff maintained friendships and cared for his elderly neighbor, despite self-reports of frequent irritability and avoidance of social interaction.  Tr. 374, 446.  The

Page 7 – FINDINGS AND RECOMMENDATION

ALJ therefore provided a specific, legitimate reason for rejecting Dr. Wilson's opinion. *Morgan*, 169 F.3d at 601-02.

The ALJ also found that the medical opinion of examining physician Daniel McCabe, M.D., contradicts Dr. Wilson's 2012 opinion. Tr. 27. Inconsistency with the objective medical evidence is a specific, legitimate reason for rejecting a physician's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Dr. McCabe evaluated plaintiff on October, 23, 2010. Tr. 373. He observed that plaintiff had no problems entering his office, and exhibited appropriate concentration, persistence, and pace throughout the exam. Dr. McCabe also noted plaintiff's appropriate attitude and grooming and normal thought processes. Tr. 373-75. These observations contradict the marked restrictions assessed by Dr. Wilson. On this record, the ALJ provided legally sufficient reasons to reject the severe limitations noted in Dr. Wilson's 2012 opinion. *Morgan*, 169 F.3d at 601-02. The ALJ's decision should be affirmed.

II.     Lay Testimony of Lydia Luther

Plaintiff next argues that the ALJ improperly rejected the lay witness testimony of his sister, Lydia Luther. The ALJ is required to provide germane reasons for rejecting lay opinion evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c), 416.927(c).

At the hearing before the ALJ, Ms. Luther testified that plaintiff suffered from limitations in his emotional and physical functioning. Tr. 47. She stated that plaintiff had difficulty completing landscaping tasks at her house due to balance and pace issues. *Id.* She testified that plaintiff could only maintain proper concentration to work on her yard when under close supervision, and could work for only two hours at a time. Tr. 47.

The ALJ gave Ms. Luther's opinion some weight, and accordingly incorporated some of her opinion into his RFC assessment. Tr. 24. The ALJ, however, rejected some of Ms. Luther's

Page 8 – FINDINGS AND RECOMMENDATION

testimony regarding plaintiff's symptoms and limitations because it conflicts with plaintiff's activities of daily living. Tr. 28; *see Molina*, 674 F.3d at 1114; *see also Lewis*, 236 F.3d at 511. Here, plaintiff's ability to pass his driving test, live alone, maintain his hygiene, perform household chores, take public transportation, and do his own shopping arguably suggest a higher level of functioning than that described by Ms. Luther in her testimony. Tr. 41, 47, 374-75. Further, Ms. Luther's testimony closely mirrored plaintiff's testimony regarding his own symptoms and limitations, which the ALJ also rejected as not credible. Plaintiff does not contest the ALJ's credibility finding; therefore, reasons assessed by the ALJ for rejecting plaintiff's testimony apply with equal force to Ms. Luther's lay statements. On this record, the ALJ provided germane reasons for rejecting parts of Ms. Luther's testimony. Any further error in the ALJ's reasoning on this matter was harmless because he provided legally sufficient reasons for rejecting Ms. Luther's lay opinion. *See Carmickle*, 533 F.3d at 1162. The ALJ's evaluation of Ms. Luther's opinion should be affirmed.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 29, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

Page 9 – FINDINGS AND RECOMMENDATION

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 12th day of January, 2015.

        /s/ Patricia Sullivan_____

Patricia Sullivan
United States Magistrate Judge